ESSEX COUNTY COURT OF COMMON PLEAS.

DEWEY FRISBY, PETITIONER-APPELLEE, v. GOOD HUMOR CORPORATION, RESPONDENT-APPELLANT.

Decided September 20, 1939.

For the petitioner-appellee, *Herman M. Wilson.*

For the respondent-appellant, *William P. Braun.*

HARTSHORNE, C. P. J.   The issue here is one of medical fact. That particular fact is the connection, or not, between the sprain or similar injury, of petitioner's right foot in September, 1936, and the foot's amputation in the spring of 1938. Irrespective of all other matters, the facts as to petitioner's condition between these periods are admitted by all the medical men to be of importance.   Such evidence is far from complete, and much in dispute.

Therefore, respondent's offer to prove by Dr. Kessler, as a fact witness, not an expert witness, both his intermediate treatment of petitioner within such period, and petitioner's admissions to him as to such intermediate condition, would, if received, have had a strong bearing on the crucial issue. Not only was Dr. Kessler not called by respondent as an expert witness on its behalf, but he had no connection whatever with respondent at the time he was a witness to the facts themselves.   He was offered solely to prove petitioner's admissions to him as medical history and his treatment of petitioner immediately thereafter at the City Hospital, as one of the hospital physicians.

Despite this the bureau refused to receive Dr. Kessler's testimony, based upon its rule 17 that, "No doctor, referee, or other employe * * * shall testify * * * in any formal proceedings in the Workmen's Compensation Bureau" except as to the service of papers or the authenticity of filed documents. This rule was promulgated under the statute (*R. S.* 1937, 34:15-64) authorizing the establishment of "necessary" rules. This rule has been recently construed in the case of *Harrison* v. *Garlitti,* 120 *N. J. L.* 64; 197 *Atl. Rep.* 377, a decision, of course, binding upon this court.

But this case, as its opinion clearly indicates, applied to far different facts, *i. e.,* in forbidding state doctors to "be retained by either side" for the obvious reason that they would then "soon come to be at least under the suspicion of leaning toward the side paying for their services." Obviously, the Supreme Court reads the rule as applicable to the facts before it, *i. e.,* the proffered testimony of the state doctor as an expert opinion witness, whose opinion might well be swayed by his retention as an expert and the payment for his services. For this swayed testimony to come in fact from the lips of one occupying the influential position of a state doctor, would clearly be against "public policy." But, by the same token, the Supreme Court did not hold this rule to apply to a mere fact witness, as here. Indeed, the statute authorizing the making of such rule would not seem to authorize any such construction of the rule itself. For the statute authorizes the commissioner to make such rules "as may in his judgment be necessary" provided they are "not inconsistent with the provisions of this chapter." Of course, this does not authorize the exercise of an unbridled arbitrary judgment, but a reasonable judgment, one which will consist with, and further, the effectuation of the act itself. The essence of the very article of the act in which this section appears (article 4, claims and determination thereof) is the proper proof of compensation claims. Of course, it would be highly improper proof for same to come from the lips of an expert attempting to serve two masters at the same time, *i. e.,* the state and the party who had retained him. On the other hand, if such state doctor were the sole witness to the death of an employe in

the course of his employment, the doctor's inability to testify to such fact would terminate finally the establishment of such just claim on behalf of the employe's dependents, and would thus frustrate the very purpose for which the act was created.

Any such construction of the act as that contended for by petitioner would thus seem utterly "inconsistent with the provisions of this chapter," and quite unauthorized, even if same were ever intended, which seems doubtful.

The record will accordingly be remanded to the bureau to take the testimony of Dr. Kessler as such fact witness, and for redetermination thereupon.